NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190458-U

NO. 4-19-0458

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 11, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| JOHN K. WILLIAMSON, | ) | No. 12CF612 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

_____

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Because defendant failed to demonstrate either "cause" or "prejudice" within the meaning of section 122-1(f) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(f) (West 2018)), the circuit court was correct to deny his motion to file a successive postconviction petition.

¶ 2        Defendant, John K. Williamson, is serving a term of 30 years' imprisonment for armed robbery (720 ILCS 5/18-2(a)(2) (West 2012)). On direct appeal, we affirmed the conviction. *People v. Williamson*, 2015 IL App (4th) 130640-U, ¶ 112. Subsequently, we affirmed the summary dismissal of defendant's initial postconviction petition, which he filed on December 30, 2015. *People v. Williamson*, 2018 IL App (4th) 160114-U, ¶ 57.

¶ 3        On June 6, 2019, defendant moved for leave to file a successive postconviction petition. See 725 ILCS 5/122-1(f) (West 2018). He claimed that, under the Supreme Court's recent decision in *Carpenter v. United States*, 585 U.S. _____, 138 S. Ct. 2206 (2018), the police should

have obtained a warrant before persuading the phone company to hand over his cell-phone records. Defendant argued that, because *Carpenter* did not exist yet when he filed his initial postconviction petition, he had cause for failing to raise this fourth-amendment violation at that time. See U.S. Const., amend. IV. He further argued that he suffered prejudice in the jury trial in that the cell-site location information was damaging evidence against him.

¶ 4　　　　On the ground of a lack of prejudice, the circuit court of Champaign County denied leave to file a successive postconviction petition. Defendant appeals. We affirm the judgment because we find no "cause" and no "prejudice" within the meaning of section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2018)).

¶ 5　　　　　　　　　　　　　I. BACKGROUND

¶ 6　　　　From the evening of April 11, 2012, into the early morning of April 12, 2012, Sean Harrington had a winning streak at Par-A-Dice Casino in East Peoria, Illinois. He took his winnings home, to his apartment in Champaign, Illinois, where, at 5:56 a.m. on April 12, 2012, he was robbed at gunpoint. The robber, it is undisputed, was Marvino Mister.

¶ 7　　　　Surveillance footage from the casino showed defendant and Marvino repeatedly passing by the craps table at which Harrington was seated. The video also showed defendant and Mister getting into a Pontiac Bonneville and leaving the casino parking lot at the same time as Harrington, at 4:32 a.m. on April 12, 2012, and following Harrington's vehicle as he headed back to Champaign.

¶ 8　　　　Defendant's cell phone records showed that, at 5:48 a.m., 6:06 a.m., and 6:15 p.m. on April 12, 2012, calls were made, on his phone, from the immediate vicinity of Champaign. These calls were to a phone number belonging to Leavall Allen, a convicted felon. Allen testified that defendant called to ask for directions out of Champaign.

¶ 9 Before requesting this cell-site location information from the phone company, the police obtained a judicial order finding that such information would be relevant to the investigation of the armed robbery. The police, however, never obtained an actual search warrant premised on probable cause.

¶ 10                              II. ANALYSIS

¶ 11                                A. Cause

¶ 12 We decide *de novo* whether leave to file a successive postconviction petition should have been granted. *People v. Diggins*, 2015 IL App (3d) 130315, ¶ 7. Such leave "may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and [that] prejudice results from that failure." 725 ILCS 5/122-1(f) (West 2018). A petitioner "shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." *Id.*

¶ 13 The claim, in this context, is that obtaining defendant's cell phone records without a warrant violated the fourth amendment. According to defendant, the cause of his omitting that claim in the initial postconviction proceeding was the nonexistence of *Carpenter* in December 2016, when he filed his initial postconviction petition. *Carpenter* was not issued until 2018. Hence, *Carpenter* was unavailable for defendant to cite as authority before then.

¶ 14 The supreme court has held, however: "[T]he lack of precedent for a position differs from 'cause' for failing to raise an issue, and a defendant must raise the issue, even when the law is against him, in order to preserve it for review." *People v. Guerrero*, 2012 IL 112020, ¶ 20. Defendant contends that the lack of *Carpenter* is cause for his failure to raise the fourth-amendment issue earlier. That contention is flatly inconsistent with the quoted holding in *Guerrero*. Defendant was expected to raise the fourth-amendment issue in the original

- 3 -

postconviction proceeding even if his chances of success at that time were slim. The supreme court in *Guerrero* cited *People v. Johnson*, 392 Ill. App. 3d 897 (2009), for the following proposition: "the mere possibility that [the] defendant's claim would have been unsuccessful does not equate to an objective factor external to the defense which precluded him from raising [the claim] in his initial postconviction petition." *Guerrero*, 2012 IL 112020, ¶ 20. In accordance with *Guerrero*, then, we agree with the State that defendant has failed to "demonstrate[ ] cause for his *** failure to bring the claim in his *** initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2018).

¶ 15                                    B. Prejudice

¶ 16         In addition to demonstrating cause, defendant must "demonstrate[ ] *** prejudice result[ing] from [his excusable] failure" to "bring the claim in his *** initial post-conviction proceedings." *Id.* "[A] prisoner shows prejudice by demonstrating that the claim not raised during his ***  initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.*

¶ 17         For two reasons, the State contends that defendant has failed to demonstrate "prejudice" within the meaning of section 122-1(f). First, under the criteria in *People v. De La Paz*, 204 Ill. 2d 426, 433 (2003), *Carpenter* does not apply retroactively to cases on collateral review. Second, because the police relied upon a court order to obtain the cell phone records, the good-faith exception to the exclusionary rule would have permitted the admission of the records notwithstanding what is only now clearly recognizable as a violation of the fourth amendment. See *People v. LeFlore*, 2015 IL 116799, ¶ 24.

¶ 18       Logically, we first should consider the question of retroactivity because the good-faith exception would presuppose the applicability of *Carpenter*. A new rule applies retroactively to cases on collateral review if the new rule does either of the following:

> "(1) places certain kinds of primary, private individual conduct beyond the power of the criminal[-]law[-]making authority to proscribe, or (2) requires the observance of those procedures that are implicit in the concept of ordered liberty." (Internal quotation marks omitted.) *De La Paz*, 204 Ill. 2d at 434.

*Carpenter* did not do the first thing. It "did not 'decriminalize' [citations] any conduct." *Id.* Nor did *Carpenter* do the second thing. The new "procedures" must be "central to an accurate determination of innocence or guilt" such that, without the procedures, "the likelihood of an accurate conviction" would be "seriously diminished." (Internal quotation marks omitted.) *Id.* *Carpenter* has nothing to do with ensuring the accurate determination of innocence or guilt. If anything, the exclusion of relevant incriminating evidence on fourth-amendment grounds would tend to make a determination of innocence less accurate.

¶ 19       Instead of trying to fit *Carpenter* into (1) or (2), defendant challenges the relevance of the test in *De La Paz*. He disputes that *Carpenter* created a "new rule." *Id.* "*Carpenter* did not establish a new rule," he maintains. Rather, *Carpenter* "applied established precedent to a new phenomenon: 'the ability to chronicle a person's past movements through the record of his cell phone signals' " (quoting *Carpenter*, 585 U.S. at _____, 138 S. Ct. at 2216).

¶ 20       "The explicit overruling of an earlier holding no doubt creates a new rule; it is more difficult, however, to determine whether [the Supreme Court] announce[s] a new rule when a decision extends the reasoning of [the Supreme Court's] prior cases" (*Saffle v. Parks*, 494 U.S. 484, 488 (1990))—as *Carpenter* did. When a case extends the reasoning of prior cases (as most

cases do, since they cite authorities), the case announces a new rule if, in a "reasonable, good-faith interpretation[ ] of existing precedents," a court could have reached the opposite conclusion. (Internal quotation marks omitted.) *Id.* If, on the other hand, in a "reasonable, good-faith interpretation[ ] of existing precedents," a court would have "felt compelled" to arrive at the same conclusion, the case does not announce a new rule. (Internal quotation marks omitted.) *Id.*

¶ 21 That the decision in *Carpenter* was five to four is a pretty good indication that *Carpenter* announced a new rule. Before *Carpenter*, it was far from clear that the third-party doctrine would be inapplicable to cell-site location information. Under the third-party doctrine, "a person ha[d] no legitimate expectation of privacy in information he [or she] voluntarily turn[ed] over to third parties." (Internal quotation marks omitted.) *Carpenter*, 585 U.S. at _____, 138 S. Ct. at 2216. This was true "even if the information [was] revealed [to the third party] on the assumption that it [would] be used only for a limited purpose." (Internal quotation marks omitted.) *Id.* After turning on their cell phones, people "continuously reveal[ed] [their] location to [their] wireless carrier." *Id.* The question in *Carpenter* was whether that fact "implicate[d] the third-party principle." *Id.* The majority in *Carpenter* held: "Given the unique nature of cell phone location records, the fact that the information is held by a third party does not by itself overcome the user's claim to Fourth Amendment protection." *Carpenter*, 585 U.S. at _____, 138 S. Ct. at 2217. Justices Kennedy, Thomas, and Alito disagreed with that holding. In their view, the cell-site location information came squarely within the third-party doctrine. *Carpenter*, 585 U.S. at _____, 138 S. Ct. at 2235 (Kennedy, J., dissenting, joined by Thomas and Alito, JJ.). In his dissent, Justice Gorsuch "[could not] fault the Sixth Circuit for holding that [the third-party doctrine] extinguish[ed] any *** Fourth Amendment interest in third party cell-site data": "[t]hat [was] the plain effect of [the] categorical holdings" in previous case law. *Carpenter*, 585 U.S. at _____, 138

S. Ct. at 2272 (Gorsuch, J., dissenting). (But Justice Gorsuch would have held that the defendant in *Carpenter* had procedurally forfeited a stronger fourth-amendment argument that would have invoked property law or would have drawn analogies to common law. See *id.*) We conclude, then, that *Carpenter* announced a "new rule" within the meaning of *Saffle* and that, under the test in *De La Paz*, the new rule does not apply retroactively to cases on collateral review. Thus, defendant has failed to demonstrate prejudice. Having arrived at those conclusions, we need not consider the good-faith exception to the exclusionary rule.

¶ 22                                    III. CONCLUSION

¶ 23        On the grounds of defendant's failure to show "cause" and "prejudice" within the meaning of section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2018)), we affirm the circuit court's judgment.

¶ 24        Affirmed.